MINNIE BARBKNECHT, Respondent, v. GREAT NORTHERN
RAILWAY COMPANY, a Corporation, Appellant.

(212 N. W. 776.)

**Dismissal — two or more causes of action — failure to substantiate one of
the causes of action not grounds for dismissal of case.**

1. Where a complaint sets forth two or more causes of action, even though
intermingled, the case should not be dismissed because of failure to substantiate
one of the causes of action, if there be sufficient proof to substantiate the
other cause; provided there are sufficient allegations to establish such other
cause even though the allegations relating to the first and which distinguish
it from the second, be stricken from the complaint.

**Carriers — passenger entitled to protection.**

2. A passenger traveling by railroad on a ticket contract is entitled to pro-
tection against the misconduct and insults of an employee of the railroad com-
pany while on duty.

**Carriers — liable for insulting language of porter.**

3. Where the porter on a train, while on duty as such porter, applies op-
probrious epithets and insulting language to such passenger the carrier is re-
sponsible in damages for such misconduct.

**Appeal and error — verdict will not be reversed where jury could not have
considered anything but insulting language.**

4. Where testimony is offered supporting a cause of action set forth in the
complaint and the plaintiff tries her case on the theory that the insults ad-
dressed to her are an "assault," and the court in its charge to the jury miscon-
strues the legal effect of the insults so as to term it an "assault" this court
will not reverse the verdict when it appears clearly that the jury could not
have considered anything but the language used and no requests were made
for specific instructions differentiating between insulting language and assault
as defined by the statute.

**Carriers — verdict excessive — reduced.**

5. Under the provisions of subdivision 5, § 7660, Comp. Laws 1913, as
amended by chapter 334 of the Sess. Laws of 1923, this court may order a re-
duction of the amount of damages allowed by the verdict of the jury, when it
appears the damages are excessive, the other issues have not been influenced

---

Annotation.—(2, 3) As to liability of carrier to passenger for wrongful con-
duct of employee, see annotation in 13 L.R.A.(N.S.) 159; 33 L.R.A.(N.S.) 386;
23 A.L.R. 391; 4 R. C. L. pp. 1174, 1175; 1 R. C. L. Supp. 1287; 5 R. C. L. Supp.
268; 6 R. C. L. Supp. 288.

**by** passion or prejudice, and when a new trial is demanded because of such excessive damages. Evidence examined and it is determined the damages allowed are excessive and clearly appear to have been given under the influence of passion or prejudice. The court therefore will grant a new trial unless the plaintiff consents to a reduction of the verdict from $2,000 to $500 and agrees to remit the excess of damages.

Opinion filed February 14, 1927.

Actions, 1 C. J. § 128 p. 1003 n. 15; p. 1005 n. 37, 38, 42; § 224 p. 1074 n. 55. Appeal and Error, 3 C. J. § 757 p. 858 n. 75 New. Carriers, 10 C. J. § 1328 p. 895 n. 97; p. 896 n. 1; § 1402 p. 992 n. 70. Dismissal and Nonsuit, 18 C. J. § 104 p. 1188 n. 66.

Appeal from the District Court of Ward County, *Lowe,* J.

Affirmed upon condition.

*Murphy & Toner,* for appellant.

To constitute an assault there must be an overt act of threatened violence with the apparent present intention and ability to commit battery. 2 Bishop, Crim. Law, §§ 22–32; 1 Whart. Crim. Law, § 603.

To constitute an attempt there must be present actual specific intent to do a complete act, and the actual doing of some overt act which is one of the series of acts directly involved in the performance of the ultimate act intended. Graham v. People (Ill.) 47 L.R.A. 731; State v. Cruikshank, 13 N. D. 337.

Making threatening gestures towards another with an ax does not constitute an assault if one is not within striking distance of him. State v. Grimes (Miss.) 54 So. 839; People v. Lilley (Mich.) 5 N. W. 982; Spradling v. State (Tex.) 71 S. W. 17.

An assault is an attempt unlawfully to apply force to the person of another. 2 Enc. Law, 953.

*John E. Burke,* for respondent.

BURR, J. Plaintiff brought action against the defendant to recover damages in the sum of $3,000 occasioned by alleged neglect of duty and misconduct of a train porter while on duty on the Great Northern train No. 4, on which train the plaintiff was a passenger from Minot to Fargo. She alleges, among other things, that while engaged in rid-

ing on the said train she was approached by the colored porter in charge of the coach and by him insulted and attacked and she was so continuously insulted on said passage during the afternoon and evening of that trip that she became very frightened and ill and nervous and sick as a result of his assault and battery. She alleges "that such assault and battery by the negro porter aforesaid was without cause or provocation and that the said porter in his insistence was rude, indecent and lascivious in his conduct toward the plaintiff."

In paragraph 6 of her complaint the plaintiff alleges "that the conduct on the part of defendant in insulting the plaintiff, and in injuring her and causing her to be sick and nervous and compelling her to spend money for medicine—has damaged her both generally and specifically in the sum of $3,000." These extracts outline the gist of plaintiff's complaint. The defendant denies that any such acts charged against the porter took place and further says that if the plaintiff was upon said train at the time and between the places mentioned "she did not make any complaint to the conductor in charge of said train, and she had plenty of opportunity so to do." As a further defense the defendant alleges that "if the said porter did act as alleged by the plaintiff" that the said porter was acting in his private capacity and "furtherance of his private interests, and was not acting within the scope or in pursuance of the authority granted him by the defendant under his contract of employment or under his duties as such porter, and the defendant had neither notice nor knowledge of the contemplated acts, if any, either before or during the time the same were being performed." The defendant further sets forth the defense of contributory negligence and lack of care on the part of the plaintiff. The case was tried to a jury, a verdict returned in favor of the plaintiff in the sum of $2,000; and from the order of the court in denying the defendant a new trial the defendant appeals. In support of this appeal defendant alleges error on the part of the court in sustaining the objection of the plaintiff to a question asked by counsel of the defendant; error in overruling the objection of the defendant to a question asked by counsel of the plaintiff; error of the court in denying the defendant's motion for a directed verdict in favor of the defendant and against the plaintiff for the dismissal of the action, which motion was made at the close of the case; error of the court in one instruction to the jury; and the

neglect of the court to submit to the jury the question of whether or not the said porter was acting in his private capacity in case he did the acts charged against him.

. .The defendant also claims, and sets forth as grounds for a new trial, that the verdict is not sustained by the evidence and that the verdict rendered is excessive "because of misapprehension of the instruction or because of passion or prejudice of the jury."

The evidence in the case shows, beyond controversy, that there was no assault committed by the porter upon the said plaintiff. She does not claim in her testimony that the defendant laid any hands upon her even, or offered, or threatened to do so. Her testimony, so far as the conduct of the porter is concerned, is devoted entirely to a recital of the conversation addressed to her and the alleged threats, insults and proposals made. But even if the plaintiff imagined that the facts recited constituted assault or assault and battery and failed in this respect it does not mean that her action should be dismissed; and misapprehension on the part of the plaintiff of the real theory underlying the state of affairs is not ground for dismissal of an action if the complaint does state a cause of action upon some theory. Under the practice in this state forms of action are abolished; there is but one form of action for the enforcement and protection of private rights and relief from injuries. Logan v. Freerks, 14 N. D. 127, 134, 103 N. W. 426. A complaint may set forth a cause of action for relief on two or more grounds and these may be intermingled; but in absence of motion to compel election the complaint is good if the proof sustains any one cause in the absence of ambiguity or uncertainty. Gessner v. Horne, 22 N. D. 60, 132 N. W. 431. The general rule is that if the facts set forth in the complaint entitle plaintiff to relief it is wholly immaterial by what name the action is called. See Grain v. Aldrich, 38 Cal. 514, 99 Am. Dec. 423; Smith v. Driscoll, 94 Wash. 441, L.R.A.1917C, 1128, 162 Pac. 572. It is a settled rule in this state that the court is not so much concerned with the plaintiff's theory or theories as to his right to recover, provided a cause of action is sufficiently stated. Kautzman v. National Union F. Ins. Co. 48 N. D. 1229, 189 N. W. 325; Peterson v. Swanson, 39 N. D. 301, 167 N. W. 389. The complaint states a cause of action for assault and battery and also a cause of action against the railroad company for the insults

to a passenger given by an employee of the railroad company while on duty. If the evidence sustains either of these then the court was justified in refusing to direct a verdict for the dismissal of the action. The plaintiff's case rests in this respect solely on her own testimony. She relates a peculiar situation. She tells how that while a passenger on the train in the company of some thirty or forty passengers the porter came to the seat behind her and talked to her suggesting that she get off at Breckenridge rather than Fargo; that he offered her some money to pay for a room in a hotel and on her refusal applied opprobrious epithets toward her. She made no complaint to anyone nor is it apparent that any passenger heard, certainly no one interfered in her behalf, and she says this course of conduct continued over a period of several hours. The entire statements recited by her would not require a great number of minutes. The conductor and other train men heard nothing and saw nothing out of the usual. It appears that during her trip there was a change of conductors and brakeman and, though plaintiff claims that part of this series of insults was delivered when the new force had charge, yet they testified they heard nothing and saw nothing out of the usual. The porter on duty on that train denied in toto such statements of the plaintiff. Nevertheless there is a conflict of testimony and the matter should have been and was submitted to the jury. The motion to dismiss was properly denied.

Two errors are charged against the court during the introduction of the testimony. It appears one H. C. Tibbs, railroad conductor on the train for part of the time and a witness for the defendant was being interrogated by the defendant as to his acquaintance with the porter in question and this question was asked him "have you at any time since you have known him, known anything against his record or any other time?" The court sustained the objection of the plaintiff to this question, the objection being that it was immaterial. We see no prejudicial error in this ruling. All the conductor has testified to prior thereto with reference to this porter was that he had "seen him before." There is nothing to show he knew anything about a record or that he knew his record. The other conductor J. A. Laird testified for the defendant and on being cross-examined by the plaintiff was asked if he remembered plaintiff "asked you just before you got into

Fargo about stopping off there and getting a train to Benson, Minnesota." Defendant objected to this as being incompetent, assuming facts not in evidence, impeaching his own witness. The court overruled and this is assigned as error. There is no merit in the objection. Plaintiff had testified as to her plans in getting off at Fargo and taking a train from there to Benson, Minnesota; that she had told the porter that was her plan and the porter was insisting that she go on to Breckenridge. The question and answer could not have injured the defendant. Witness had already testified that he saw nothing or heard nothing which indicated that any woman was being insulted and when asked on cross-examination if he remembered her being on the train he said he did not. Then this question was asked, evidently to refresh his memory.

The defendant had set up as a defense that if the porter did any of the acts charged he was acting in his private capacity and that the court not only failed to submit this matter to the jury but in his charge stated that the defendant "would be responsible for an unjustified assault by one of its porters while on duty and if you find a porter in the employ of the defendant did assault the plaintiff as claimed by her, then I charge you that the plaintiff would be entitled to recover damages from the defendant." In effect the court charged that if the porter did assault the plaintiff as she says he did she would be entitled to recover from the defendant. This theory is correct, if the acts related by the plaintiff took place while the porter was on duty. A passenger riding on a train under a ticket contract not only contracts for transportation but also for reasonable and decent treatment. His contract entitled him to have the servants and agents of the carrier treat him with respect and courtesy, and it is the duty of the carrier to protect him against insult and indignities on the part of employees. See Lamson v. Great Northern R. Co. 114 Minn. 182, 130 N. W. 943, Ann. Cas. 1914A, 15; Chesapeake &.O. R. Co. v. Francisco, 149 Ky. 307, 42 L.R.A.(N.S.) 83, 148 S. W. 46, 2 N. C. C. A. 636. This rule in regard to courtesy, respect and consideration is more strictly applied when the passenger is a woman. See Savannah, F. & W. R. Co. v. Quo, 103 Ga. 125, 40 L.R.A. 483, 68 Am. St. Rep. 85, 29 S. E. 607, 3 Am. Neg. Rep. 777. The rule is well stated in 4 R. C. L. 1174. If the porter did as was charged then the company would be liable for the injuries occasioned and it was not necessary to submit

this matter to a jury. See Mandel v. Byram, — Wis. —, 211 N. W. 145.

We have serious difficulty, however, in determining whether a verdict rendered for the plaintiff should be upheld on the state of the record. Plaintiff presented her case to the jury on a theory of assault and battery and no instructions were requested by either side with reference to the question or amount of the liability of defendant for insults and disgraceful conduct toward the plaintiff. The court did not give a separate and independent instruction in this respect. The court in its charge to the jury states the gist of the pleadings. In stating plaintiff's complaint he showed that plaintiff claimed she had been insulted by this porter; that he had called her vile and indecent names and that when she refused to talk with him or have anything to do with him that he insulted her—that he insulted her in rude language, called her a "dirty bitch" and told her that if she would not go to Breckenridge and to a hotel with him she could "go to Hell." The court also stated the gist of the answer and all of the defense set up by the defendant, then gave the instructions in regard to the right to recover damages, and when recoverable, as well as the definition of the term "detriment," and showed that if there was a breach of an obligation due the plaintiff from the defendant she could recover for this breach. A portion of the charge is as follows: "I charge you that an assault is any wilful and unlawful attempt or offer with force or violence to do a corporal hurt to another. I further charge you that the defendant would be responsible for an unjustified assault by one of its porters while on duty, and if you find a porter in the employ of the defendant did assault the plaintiff as claimed by her, then I charge you that the plaintiff would be entitled to recover damages from the defendant." In this charge it will be observed the court told the jury that if "the defendant did assault the plaintiff as claimed by her" then the plaintiff could recover. The court said nothing about "insult" but used the term "assault." The court construed the language addressed to her to be an assault. In the absence of a request for an instruction deferentiating between insult and assault and battery we cannot say but what the question of the insulting language was submitted. The defendant objects to the portion of the charge last quoted, because of the defining of the assault, not as much that the law is not technically correct but

claims there was no evidence justifying any reference to assault or assault and battery and therefore the action of the court in the charging of this part of the case would naturally lead the jury to believe there was something in the case involving assault and battery and further that the amount of the verdict returned proved the jury considered there was an assault and battery. In other words, the jury misconstrued the import of the law laid down and defendant therefore argues that the verdict is excessive and says it was returned either because of passion or prejudice on the part of the jury or because of misconstruction of the charge. The whole theory presented to the jury was that the opprobrious language in effect, constituted an assault. The term "assault" has a definite meaning in our statute, but no testimony as to violence, except verbal violence being offered, the jury must have considered the insults alone. While we feel constrained to say there is great force in this argument of the defendant the question of facts submitted to the jury was manifestly the insults and was one for the jury to determine. Though within the province of the jury to determine yet it rests solely upon the unsupported statements of the plaintiff. She made no attempt to protect herself in any way; she did not even remove from her seat. She says no conductor came through the train all the time she was on it from Minot to Fargo whereas the record shows there was a change of conductors at New Rockford and this conductor swears he went through the train and took up the tickets after he left New Rockford. She appealed to no passenger, no train employee, and made no outcry of any kind. Of course, this does not justify insulting language and she is entitled to protection; nevertheless it must have some bearing upon the amount of damages which she can recover. A verdict of $2,000 is grossly excessive under the circumstances of the case. No other employee of the company had any intimation of the conduct complained of. The acts were secretive and the words uttered in low tones. The verdict would not be excessive for many cases of assault or assault and battery, as defined by our statute, but there is no assault or assault and battery in this case. The utmost complaint she can have is for the insulting language directed toward her and which the jury must have found to have been as she stated. For this reason and under the authority given the court under the provisions of § 7660 as amended by chapter 334, Sess. Laws 1923

this court will grant a new trial unless the plaintiff consents to the reduction of the verdict to the sum of $500 and remits the excess of damages. If the plaintiff agrees to this reduction, the judgment is affirmed with costs; otherwise the case will be reversed and a new trial granted. The plaintiff will be given thirty days from the filing of the remittitur in the district court to determine whether she will accept or reject this reduction.

BIRDZELL, Ch. J., and BURKE, NUESSLE, and CHRISTIANSON, JJ., concur.